**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                          :
AMETHYST INTERNATIONAL, INC.,          :
                                                          :
                                Plaintiff,             :
                                                          :       Civil Action No. 13-04287 (FLW)(LHG)
            v.                                          :
                                                          :                **OPINION**
JUDITH DUCHESS, INDIVIDUALLY        :
AND AS EXECUTRIX OF THE ESTATE      :
OF JEAN A. FERNICOLA, a/k/a             :
ANGELINA N. FERNIOLA, and THE        :
ESTATE OF JEAN A. FERNICOLA, a/k/a  :
ANGELINA N. FERNICOLA,                    :
DECEASED, BOYNTON AND                    :
BOYNTON, and SELECTIVE                    :
INSURANCE,                                          :
                                                          :
                                Defendants.          :
_____ :


**WOLFSON, United States District Judge:**


        Before the Court is the Motion of Defendant and Counterclaim/Crossclaim Plaintiff Selective Insurance Company of America ("Selective") to interplead disputed flood insurance proceeds (the "Proceeds") and dismiss all claims against Selective in the Amended Complaint of Plaintiff Amethyst International, Inc. ("Plaintiff"). This matter was removed to the Court by Selective from the Superior Court of New Jersey. In a separately pending Motion to Dismiss, Defendant and Crossclaim Defendant Judith Duchess ("Duchess") contends that litigation concerning ownership of the Proceeds is already pending before the state Circuit Court of Florida.

For the reasons that follow, this Court (i) grants Selective's Motion to interplead funds, (ii) dismisses all claims against Selective with prejudice, and (iii) remands this action to the Superior Court of New Jersey, Ocean County, Chancery Division. The interpleaded funds shall be deposited with the Court and held until after the legal ownership of the Proceeds is determined by either the New Jersey or Florida state court.

I. Background & Procedural History

This case concerns the disputed ownership of flood insurance proceeds which were to be distributed after a property located in Point Pleasant Beach (the "Property") was damaged during Hurricane Sandy in October of 2012. Plaintiff owned the Property and insured it against flood damage with a Standard Flood Insurance Policy ("SFIP") purchased from Selective. All SFIPs issued by private insurers like Selective are governed by the regulations of the National Flood Insurance Program ("NFIP"), a federally administered program established by the National Flood Insurance Act ("NFIA").

After the Property sustained damage during Hurricane Sandy, Plaintiff notified Selective of its claim for flood damage on or about November 2, 2012. Shortly thereafter, Defendant Duchess contacted Selective and provided documentation evidencing her status as a mortgagee on the Property. Jean Fernicola, the mother of both Plaintiff's primary stockholder and of Duchess, was the original mortgagee on the property, having executed a mortgage in May of 1989. When Jean Fernicola died on March 26, 2006, Duchess, as the personal representative of her mother's estate (the "Estate"), became the

new mortgagee of Plaintiff's property. It was thus in her capacity as a representative of the Estate that Duchess contacted Selective and asserted her rights as a mortgagee after Plaintiff's November 2012 insurance claim.

Once contacted by Duchess, and having received Duchess's corroborating mortgage documentation, Selective complied with 44 C.F.R. pt. 61, app. A(2), art. VII(Q)[1] and added Duchess as the named mortgagee on Plaintiff's SFIP. Selective then retained an independent claims adjuster to review the damage to Plaintiff's Property. The adjuster inspected the Property and recommended payment of Plaintiff's claim in two installments. The first recommendation, issued on November 26, 2012, called for an advance payment of $75,000 in insurance proceeds for Building Coverage losses to the

---

[1] The relevant language of article VII(Q) provides:
Q. Mortgage Clause
The word "mortgagee" includes trustee.
*Any loss payable under Coverage A--Building Property will be paid to any mortgagee of whom we have actual notice, as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear.* If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
1. Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;
2. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
3. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.
All terms of this policy apply to the mortgagee.
The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.
If we decide to cancel or not renew this policy, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or non-renewal.
If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.
44 C.F.R. pt. 61, app. A(2), art. VII(Q) (emphasis added).

Property. Selective issued a check in that amount on December 19, 2012. The second recommendation, issued on April 2, 2013, called for an additional payment of $246,800 in Building Coverage losses. Selective issued a check in that amount on April 9, 2013. Selective made the checks payable both to Plaintiff as the holder of the insurance policy *and* to Duchess as the insured Property's mortgagee pursuant to 44 C.F.R. pt. 61, app. A(2), art. VII(Q).[2] Selective mailed both checks to Plaintiff's mailing address. Neither check was ever cashed. The initial $75,000 payment became stale-dated on June 23, 2013, and the subsequent $246,800 check was voided after Selective decided to pursue its present Counterclaim/Crossclaim in interpleader.

The underlying action in this case began on February 25, 2013, when Plaintiff filed a Complaint in the Superior Court of New Jersey, Ocean County, Chancery Division, Docket No. OCN-C-49-13, naming Duchess and the Estate as defendants, and seeking declaratory relief in the form of an entitlement to flood insurance proceeds as well as damages for state law fraud, negligent misrepresentation, and tortious interference. Plaintiff later filed an Amended Complaint on May 2, 2013, in which Plaintiff's insurance broker ("Boynton & Boynton") and insurer ("Selective") were added as defendants. Plaintiff added claims against Boynton & Boynton for fraud, tortious interference, and bad faith, and, more importantly for the present Counterclaim and Motion, also added claims against Selective for breach of contract (Count Five), bad faith (Count Six), and fraud (Count Seven). Shortly thereafter, on June 25, 2013, Defendants, Duchess and the Estate, filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim

---

[2] *See, supra,* footnote 1.

pursuant to New Jersey Court Rule 4:6-2(a)(b)(e). They also moved for the imposition of sanctions against Plaintiff and the award of attorney's fees and costs to Defendants pursuant to New Jersey Court Rule 1:4-8 and N.J.S.A. 2A:15-59.1. The primary basis of Defendants' motions was the contention that a lawsuit in Florida state court concerning the disposition of the disputed insurance proceeds was already pending at the time Plaintiff filed the Complaint,[3] and moreover, that any action in the state courts of New Jersey was foreclosed by the New Jersey Appellate Division's decision in *John A. Fernicola v. Judith M. Duchess, Individually and as Executrix and Personal Representative of the Estate of Jean A. Fernicola a/k/a Angelina N. Fernicola, Deceased*, 2008 WL 833965 (N.J. Super. App. Div.) (hereinafter "*Fernicola I*"). In that case, the court held that the courts of Florida and not New Jersey had jurisdiction over moneys disputed as part of larger claims surrounding a Florida decedent's estate. Accordingly, Defendants allege that Plaintiff, in bringing suit in New Jersey, is engaging in frivolous and vexatious litigation in direct violation of the New Jersey Appellate Division's ruling.

Before Defendants Duchess' and the Estate's motions could be heard, on July 12, 2013, Defendant Selective filed a Notice of Removal to this Court, invoking the Court's exclusive and original jurisdiction over breach of contract claims under the NFIA, pursuant to 42 U.S.C. § 4072; federal question jurisdiction, pursuant to 28 U.S.C. § 1331; and supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367. Defendants Duchess and the Estate promptly reinstated in this Court their Motions to Dismiss for Lack of Jurisdiction, on July 26, 2013, and for Sanctions, on August 14,

---

[3] *John A. Fernicola v. The Estate of Jean A. Fernicola a/k/a Angelina A. Fernicola, Deceased, through Judith M. Duchess, Personal Representative*, in the Circuit Court of Florida's Sixth Judicial Circuit, in and for Pinellas County, Florida, Case No. 07-000473-CI-020.

2013. During the same period, Selective, on August 2, 2013, Answered the Complaint and initiated a Counterclaim/Crossclaim in Interpleader. Plaintiff responded to Duchess' motions and filed its own Motion to Amend the Complaint on September 11, 2013, but failed to answer Selective's Counterclaim. Thereafter, on September 13, 2013, Selective made a Request for Default of the Clerk of Court on its Counterclaim/Crossclaim.[4] Plaintiff responded with still another Motion for Leave to File an Answer to Selective's Counterclaim on September 18, 2013. While the Court was reviewing the voluminous briefing surrounding the pending motions, Selective, on October 11, 2013, filed the present Motion to Interplead Funds and Dismiss with prejudice Counts Five, Six, and Seven of the Amended Complaint as alleged against Selective. Duchess filed a Letter Brief in Opposition on October 21. Just a few days later, on October 25, Plaintiff filed its Opposition to the Motion, including both arguments against dismissal of the claims against Selective and Opposition to the Counterclaim in Interpleader, mooting the earlier Motion for Leave to Answer Selective's Counterclaim. Accordingly, the Court now considers Selective's Counterclaim/Crossclaim and Motion to Interplead Funds and Dismiss Claims along with the Oppositions of both Plaintiff and Duchess.

II. Jurisdiction & Venue

"There are two methods for bringing an interpleader in federal court. The first is the interpleader statute, 28 U.S.C. § 1335. District Courts have subject matter jurisdiction under this provision if there is 'minimal diversity' between two or more adverse

---

[4] The Clerk of Court never entered default against either Plaintiff or Duchess. The Court will now consider both parties' Oppositions to Selective's Counterclaim and Motion.

claimants, and if the amount in controversy is $500 or more. *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530–31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). The second is Federal Rule of Civil Procedure 22. Unlike its statutory counterpart, rule interpleader is no more than a procedural device; the plaintiff must plead and prove an independent basis for subject matter jurisdiction. *See NYLife Distrib., Inc. v. Adherence Group, Inc.,* 72 F.3d 371, 372 n. 1 (3d Cir. 1995); *Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 584 (D.C. Cir. 1993)." *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 275 (3d Cir. 2007). Selective claims entitlement to both rule and statutory interpleader. While the Court is confident that Selective has also pleaded an independent basis for subject matter jurisdiction, because the jurisdictional elements of statutory interpleader are met in this case, I restrict my analysis to § 1335.

This Court has jurisdiction over Selective's Counterclaim/Crossclaim in Interpleader pursuant to 28 U.S.C. § 1335, which provides that:

> **(a)** The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
>> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
>>
>> (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future

order or judgment of the court with respect to the subject matter of the controversy.

**(b)** Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

The two claimants in this case are of diverse citizenship. Plaintiff Amethyst is a New Jersey Corporation and Defendants Duchess and the Estate (claiming together) are citizens of the state of Florida. Amended Complaint, ¶¶ 1, 2. And, the $321,800 of insurance proceeds in dispute exceeds the $500 jurisdictional threshold. Amended Complaint, ¶ 33 (listed as a claim for $400,000 with certain proceeds made payable).

Venue is proper in this district, pursuant to 28 U.S.C. § 1397 ("Any civil action of interpleader or in the nature of interpleader under § 1335 of this title may be brought in the judicial district in which one or more of the claimants reside"). Claimant Plaintiff is a citizen of the state of New Jersey, the jurisdiction in which this Court sits.

III. Standard of Review for Interpleader

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life*, 501 F.3d at 275 (quoting *NYLife,* 72 F.3d at 372 n. 1). The plaintiff in an interpleader action, who may already be the defendant in an underlying lawsuit claiming the property, is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability. *Id.* Interpleader allows the stakeholder to file suit, or counterclaim against the claimants, deposit the property with the court, and withdraw from the proceedings. The competing claimants are then left to litigate between themselves. *Id.*;

*See also* Zechariah Chaffee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936).

The typical interpleader action proceeds in two distinct stages. *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (citing *NYLife,* 72 F.3d at 375). During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants. *Id.* During the second stage, the court determines the respective rights of the claimants to the interpleaded funds. *Id.* The present action was removed to this Court on the basis of the exclusive and original jurisdiction of the federal courts over claims for breach of contract under the NFIA pursuant to 42 U.S.C. § 4072, federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. The only federal claim in this case granting this Court jurisdiction under the aforementioned provisions is Count Five of the Amended Complaint – Plaintiff's claim for breach of an SFIP issued as part of the NFIP under the NFIA. Accordingly, if at the first stage of interpleader analysis, this Court finds Selective's interpleader action to have been properly brought and excuses Selective from further liability, including the dismissal of Count 5 of the Amended Complaint, the Court would consider the appropriateness of remand before proceeding to the second stage analysis of the claimants' rights to the interpleaded funds.

IV. Appropriateness of Interpleader Counterclaim/Crossclaim

As a threshold matter, it is indisputable that the primary purpose of this case is to determine who is the rightful owner of the insurance proceeds to be paid by Selective. *See* Count One of the Amended Complaint. There are two adverse claimants to the Proceeds, each of whom asserts the exclusive right to their possession. Plaintiff claims as the policyholder to have been the sole beneficiary of the policy. Amended Complaint, ¶¶ 18, 21, 36. In answer, Defendants Duchess and the Estate claim sole ownership over the Proceeds as the Property's mortgagee. Brief in Support of Motion to Dismiss, pp. 5-6; Reply in Further Support of Motion to Dismiss, pp. 1-2, 5-6. As the jurisdictional elements of diversity of citizenship and requisite amount in controversy have also been met, this case seems an ideal candidate for an action in interpleader.

Plaintiff opposes interpleader on the ground that Selective, in part, created the dispute over the Proceeds by incorrectly interpreting the SFIP so as to include Duchess in the class of mortgagees who must be named beneficiaries on any insurance proceeds paid to a policyholder. Brief in Opposition to Interpleader, pp. 18-19. Plaintiff offers no statutory or case law in support of its position, and does not address the clear language of 44 C.F.R. pt. 61, app. A(2), art. VII(Q) invoked by Selective. Even more fundamentally, in its considerable discussion of the intent of Congress in passing the NFIA, and, somewhat puzzlingly, of potential definitions of the word "Lender" under the law, Plaintiff takes no account of the "Definitions" section of its own insurance policy, which makes clear that *mortgagees* are included among the insured. *See* 44 C.F.R. pt. 61, app. A(2), art. II(A) ("In this policy, 'you' and 'your' refer to the insured(s) shown on the

Declarations Page of this policy. Insured(s) includes: Any mortgagee and loss payee named in the Application and Declaration page, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence."). In the face of plain language in the federal regulations and in the policy instrument itself, Plaintiff's vague objection to the unfairness of denying it an opportunity to argue that Selective played a hand in creating the dispute by misinterpreting the SFIP cannot stand. Accordingly, the Court rejects Plaintiff's objection to the appropriateness of interpleader in this case.

Defendant Duchess also responded in opposition to Selective's action in interpleader. She does not object to Selective's depositing of the disputed insurance Proceeds *in a court*, but makes a request of this Court to allow Selective to deposit the Proceeds *in the Florida state court* in which an allegedly identical action concerning the Proceeds is already underway. However, nothing in Duchess' Letter Response to the Crossclaim and Motion suggests why Selective is not legally entitled to deposit the Proceeds in this district, nor does she provide any other reason why this Court should deny Selective the requested relief.[5] On the contrary, Selective in its Counterclaim and

---

[5] Although not identified by Duchess, the Court has found at least one case in this Circuit, and as it happens also from this district, in which a court recognized that interpleader might not be appropriate where there are pending actions in state court. *See New Jersey Sports Prods., Inc. v. Don King Prods., Inc.*, 15 F. Supp. 2d 534, 542 (D.N.J. 1998) ("When a court determines that a state action commenced earlier provides an adequate remedy, the proper course is to deny the motion to interplead. 7 Charles A. Wright & Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1709 at 534 n. 9 (1986 & 1996 supp.). . . . [A] court may dismiss or stay an interpleader proceeding if an action already pending before another court might obviate the need for employing the interpleader remedy or eliminate the threat of multiple vexation. This certainly would be the case if the disputed issues are likely to be resolved in the other proceeding.")(internal citation omitted). Here, however, this Court cannot determine whether the earlier Florida action provides an adequate remedy without usurping the New Jersey state court's

Motion pleads facts sufficient to give this Court jurisdiction over the interpleader action under 28 U.S.C. § 1335. There are diverse parties, contesting the ownership of insurance proceeds, in a dispute not of the insurer's making. Venue is also proper in this district because "any civil action of interpleader . . . may be brought in the judicial district in which one or more of the claimants reside," and the Plaintiff is a citizen of the state in which this Court sits. 28 U.S.C. § 1397. The equities, in short, weigh heavily in favor of granting Selective's request to deposit funds and then leave the dispute to the real parties in interest to litigate: Duchess and the Fernicola estate she represents on the one side, and her brother's company, Amethyst, on the other.

Duchess' request, which would require this Court, under dubious authority, to order Selective to intervene in the Florida action and move to interplead the funds there, also necessarily asks this Court to decide her other motions, which are best addressed by the New Jersey state court. In order to determine whether the action pending in Florida state court would be a more appropriate venue for interpleader, this Court would have to determine whether a dispute over the Proceeds is indeed before that court. This is the exact question in Duchess's Motion to Dismiss: whether Plaintiff's Amended Complaint, as originally brought in New Jersey state court is duplicative of the Florida action and in violation of the New Jersey Appellate Division's order in the earlier case of *Fernicola I*. Given that this Court finds, *infra*, that its jurisdiction over Plaintiff's surviving claims, including those implicated in Duchess's motions, is purely supplemental, it is clear that

---

prerogative to rule on whether its order in *Fernicola I* has been violated. As discussed, *infra*, the joint questions of whether the Florida action actually concerns the Proceeds and whether Plaintiff's filing of the Amended Complaint in New Jersey state court was duplicative of that action and therefore in violation of the ruling in *Fernicola I* are better resolved by the New Jersey state court after this Court has dismissed all bases of federal jurisdiction.

the state courts of New Jersey are the superior venue in which to resolve the motions on the issue whether this case will proceed in New Jersey or Florida.[6]

Stated simply, the New Jersey courts are better positioned to decide whether their own order has been violated by Plaintiff's filings. It would be a needless overreach and encroachment upon federalism for this Court to prematurely rule on the issue of the *res judicata* effect of the New Jersey Appellate Division's ruling, when a properly brought interpleader counterclaim for which there is jurisdiction and venue is now before us. *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009) (affirming the district court's exercise of discretion to decline to hear state law claims where a party "identifies no case law suggesting a strict order of decision whereby res judicata, if applicable, supercedes a district court's exercise of the discretion expressly afforded by section 1367(c)(3)"). The Court thus rejects Duchess' request in Opposition to Selective's motion. Accordingly, because Selective has shown that its action in interpleader is appropriate, and the court rejects the objections of Plaintiff and the other Defendants, this Court grants Selective's motion to deposit the funds in this District to await further order of this Court after the question of entitlement to the Proceeds has been determined in either of the New Jersey or Florida state court actions.

V. Standard of Review for Motion to Dismiss on the Pleadings

While Selective has not indicated the procedural form of its Motion to Dismiss Plaintiff's Claims with Prejudice, because it was filed after Selective's Answer, the Court

---

[6] See discussion of 28 U.S.C. § 1367, *infra*, at VI.

13

will construe the Motion as if brought under Rule 12(c), which permits parties to challenge the sufficiency of the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard that a court applies on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same standard that a court applies in deciding a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Gov't of Virgin Islands,* 938 F.2d 427 (3d Cir. 1991); *see also Spruill v. Gillis,* 372 F.3d 218, 223 n. 2 (3d Cir. 2004). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted).

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 550 U.S. at 546 (quoting *Conley,* 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 554. The Third Circuit has summed up the Supreme Court's *Twombly* formulation of the pleading standard as: "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 127 S.Ct. at 1965).

The Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), while affirming that the *Twombly* standard applies to all motions to dismiss, further clarified the standard for judgment on the pleadings. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 663. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 663-64. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* In short, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).

## VI. Motion to Dismiss Claims Against Selective

Having found that interpleader is appropriate in this case, the only remaining question in the first stage of interpleader analysis is whether Selective should be relieved of any further liability to Plaintiff. Count One of the Amended Complaint sought declaration of the right of possession of the insurance proceeds and, thus, is necessarily dismissed against Selective by grant of the interpleader. Counts Five, Six, and Seven are also brought against Selective, and while concerning the decision not to disburse the proceeds to Plaintiff alone, at least facially purport to sound in the law of contract and tort. On their face then, Counts Five, Six, and Seven are not necessarily precluded by the

grant of interpleader, but based upon the actual substance of the particular claims they may yet be. Fortunately, the Third Circuit has enunciated a clear standard for making such determinations:

> Does bringing a valid interpleader action shield a stakeholder from further liability to the claimants not only with respect to the amount owed, but also with respect to counterclaims brought by the claimants? We hold that it can where [(1)] the stakeholder bears no blame for the existence of the ownership controversy and [(2)] the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants.

*Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 259 (3d Cir. 2009).

As discussed above, Plaintiff has presented no coherent legal theory nor pleaded any facts, taken if true, to suggest that the explicit terms of the SFIP did not require Selective to treat Duchess as a mortgagee. On the contrary, the policy on its face supports the conclusion that Selective had an obligation to make all mortgagees, of which it was aware at the time of Plaintiff's insurance claim, co-payees on Plaintiff's policy. Accordingly, the Court finds that Selective bears no blame for the existence of the ownership controversy in this case.

For this Court to dismiss Plaintiff's remaining claims against Selective, the only remaining issue is whether Counts Five, Six, and Seven are directly related to Selective's failure to resolve the underlying ownership controversy in Plaintiff's favor. "[T]he normal rule is that Interpleader protection does not extend to []claims that are not claims to the interpleaded funds. *Cf. State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 535 (1967) (cautioning that 'interpleader was never intended ... to be an all-purpose bill of peace')." *Prudential*, 553 F.3d at 264. As in *Prudential*, however, "[t]his is not the typical case." *Id.* Here, as in *Prudential*, "each of [Plaintiff's claims] concern [the insurer's] failure to resolve its investigation in [Plaintiff's] favor and pay out the . . .

16

insurance proceeds to [Plaintiff]. . . . As such, none of the []claims is truly independent of [the question of] who was entitled to the . . . insurance proceeds, which is the issue the interpleader action was brought to settle." *Id.* In its Opposition to Selective's Motion, Plaintiff contends that Counts Five, Six, and Seven of the Amended Complaint all involve allegations of misconduct or bad faith on the part of Selective. Accordingly, the recovery in damages that Plaintiff seeks could arguably be drawn from Selective's own funds, not from the corpus of the disputed insurance Proceeds. Considering each of Plaintiff's claims against Selective in turn, the Court finds (1) that each of the three claims is primarily a claim to the interpleaded funds, and (2) even were that not the case, while each claim ostensibly alleges bad faith, "none is truly independent" of Plaintiff's objection to Selective's decision to resolve the ownership dispute over the Proceeds by means of interpleader.

In its pleas for relief in this case, Plaintiff secondarily requests "costs and other relief as the Court may deem fit," but, in all three counts against Selective, Plaintiff first asks for "judgment against Defendants jointly and severally for . . . [p]ossession of said proceeds in favor of Plaintiff or its assignee." Amended Complaint, ¶¶ 37(a), 41(a), 50(a). By the normal rule in interpleader cases then, Counts Five, Six, and Seven of the Amended Complaint could be precluded as claims *to the interpleaded funds*. *Prudential*, 553 F.3d at 264. Still, reviewing the allegations in the Amended Complaint in the light most favorable to the non-moving party, Plaintiff's secondary claims for costs and such other relief as the Court may deem fit could be drawn from Selective's own funds and not the Proceeds. Accordingly, the Court will proceed to evaluate the "independence" of

17

Plaintiff's claims from the underlying ownership dispute over the proceeds according to the standard enunciated in *Prudential*.

Count Five of the Amended Complaint, alleging breach of contract by Selective includes an assertion of bad faith. "By adding Judith Duchess and the Estate of Jean Fernicola as co-loss payees, this Defendant is self serving [sic] and attempting to avoid honoring its contract by issuing loss funds to other payees who have no interests in the contract of insurance." Amended Complaint, ¶ 36. There is no logical distinction between the allegation in this count –that Selective wrongfully added Duchess as a co-loss payee— and the matter which interpleader was designed to resolve –which claimant is entitled to the Proceeds. Count Five, absent any other factual allegations or supporting law, is just another way for Plaintiff to assert that Selective is liable for choosing to interplead the Proceeds rather than pay them to Plaintiff alone. "To allow [Selective] to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.'" *Prudential*, 553 F.3d at 264 (citing *Bierman v. Marcus,* 246 F.2d 200, 202 (3d Cir. 1957)). "Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." *Id.*

Count Six, alleging bad faith on the part of Selective in handling Plaintiff's claim, and Count Seven, alleging fraud by Selective in naming Duchess a co-loss payee, are similarly derivative of the central ownership dispute. Plaintiff claims bad faith in that Selective "did not advise AMETHYST that it was no longer a primary payee on the

insurance policy prior to naming Judith Duchess and the Estate . . . as the primary payees." Amended Complaint, ¶ 40. Plaintiff similarly claims fraud in that Selective added Judith Duchess as a payee on Plaintiff's Policy without advising Plaintiff. *Id.* at ¶ 45. Both of these allegations are premised on Plaintiff's position that Selective should have chosen to pay Plaintiff rather than recognize the existence of an ownership dispute over the Proceeds. Duchess' letter alerting Selective to her existence as a mortgagee with a claim to the Proceeds under the SFIP, not Selective's decision to pursue an action in interpleader rather than paying Plaintiff alone and risking suit from Duchess, created the ownership dispute in this matter. *See* 44 C.F.R. pt. 61, app. A(2), art. VII(Q). The law of the Third Circuit does not permit Plaintiff to argue otherwise and pursue federal contract and state bad faith and fraud claims which would frustrate the purpose of the interpleader remedy. *Prudential*, 553 F.3d at 264.

Therefore, "because there was a legitimate dispute over entitlement to . . . insurance proceeds, and because [Defendant] was not to blame for the existence of that dispute, [Defendant] was eligible to bring an interpleader action to resolve that controversy. Bringing that action, in turn, protected it not only from further liability to the claimants for the amount owed under the . . . insurance policy, but also from liability arising out of its decision to settle the ownership controversy by way of interpleader." *Id.* at 266. Counts Five, Six, and Seven all arise out of Selective's decision to recognize the dispute between Duchess and Plaintiff over the ownership of the Proceeds and to proceed with an action in interpleader, rather than choosing to pay either of the claimants and face the suit of the other. All three counts as alleged against Selective are foreclosed by Selective's successful interpleader of the Proceeds and are dismissed with prejudice.

VII. Appropriateness of Remand

Because federal jurisdiction in this case is based upon Count Five of the Amended Complaint, and the granting of Selective's interpleader counterclaim works to dismiss Count Five, the only remaining basis for this Court's jurisdiction over Plaintiff's remaining claims is supplemental jurisdiction. 28 U.S.C. § 1367(c)(3) permits the district court, within its discretion, to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Indeed, the Third Circuit has used even stronger language to describe the court's obligations under the provision. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citing *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir. 1993); *Lovell Mfg. v. Export–Import Bank of the United States,* 843 F.2d 725 (3d Cir. 1988)).[7]

In light of the relatively early stage of proceedings before this Court, the fact that the remaining counts of the Amended Complaint all concern matters of New Jersey state law, and, significantly, that the remaining pending motions require a court, first and

---

[7] *See also Growth Horizons,* 983 F.2d at 1284-85 (quoting David D. Siegel, *Practice Commentary,* appended to 28 U.S.C.A. § 1367) ("Whether a dismissal of the touchstone claim should bring about a dismissal ... of the dependent claim for want of supplemental jurisdiction should hinge on the moment within the litigation when the dismissal of the touchstone claim takes place and on the other surrounding circumstances.... [I]f the dismissal of the main claim occurs late in the action, ... knocking [the dependent claims] down with a belated rejection of supplemental jurisdiction may not be fair.").

foremost, to determine whether the Amended Complaint was filed in violation of an order of the New Jersey Appellate Division, it is appropriate for this Court to decline to exercise supplemental jurisdiction over the Amended Complaint. "While § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear, based on the teachings of *Carnegie–Mellon,* 484 U.S. at 343, 108 S.Ct. at 615, [the Third Circuit] believe[s] that in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice." *Borough of W. Mifflin*, 45 F.3d at 788 (citing *Balazik v. County of Dauphin,* 44 F.3d 209, 216–17 (3d Cir. 1995)). In accordance with my findings above, I remand the matter back to the Superior Court of New Jersey, Ocean County, Chancery Division.[8]

Conclusion

For the foregoing reasons Selective's Counterclaim/Crossclaim in Interpleader is granted, with instructions that Selective deposit $321,800 into the registry of the Court. Plaintiff Amethyst and Defendant Duchess are instructed to bring a Motion for Release and Disbursement of Interpleaded Funds once final judgment has been entered in either the New Jersey or Florida state court actions determining the ownership of the Proceeds. Having determined that Plaintiff's breach of contract, bad faith, and fraud claims against Selective are not independent of and are foreclosed by Selective's successful interpleader Counterclaim, Count Five of the Amended Complaint is dismissed with prejudice and Counts Six and Seven, as alleged against Defendant Selective, are also dismissed with

---

[8] See discussion of § 1367(c)(3) and *res judicata*, *supra*, at IV.

prejudice. With Count One, as against Selective, also necessarily having been dismissed by action of interpleader, no claims remain against Selective. Accordingly, Selective will be dismissed as a party to this action after the disputed Proceeds have been deposited with the Court.

This matter was removed to this Court on the basis of the exclusive and original jurisdiction of the federal courts over breach of SFIP contract claims under 42 U.S.C. § 4072, federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. Both this Court's § 4072 jurisdiction and § 1331 jurisdiction rested solely upon the presence in the Amended Complaint of Count Five –for breach of an SFIP contract. Count Five having been dismissed with prejudice in its entirety, this Court declines, for the foregoing reasons, to exercise its supplemental jurisdiction under § 1367 over Plaintiff's remaining claims. This matter is therefore remanded to the Superior Court of New Jersey, Ocean County, Chancery Division.[9]


Order to follow.


Dated: _____2/20/2014_____                          _____/s/ Freda L. Wolfson_____
                                                    The Honorable Freda L. Wolfson
                                                    United States District Judge

---

[9] Plaintiff and Duchess may refile their pending motions in the state court.